Filed 2/4/22  P. v. Garcia CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B308824 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA110432) |
| v. | |
| FRANCISCO GARCIA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Robert C. Vanderet, Judge.  Affirmed.

Tracy J. Dressner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Idan Ivri and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

_____

This appeal from the denial of a petition for resentencing under Penal Code[1] section 1170.95 presents two issues we addressed in *People v. Nunez* (2020) 57 Cal.App.5th 78, review granted, January 13, 2021, S265918 (*Nunez*): (1) Does a jury's felony-murder special-circumstance finding, made before the California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), make a defendant ineligible for relief under section 1170.95 as a matter of law? and (2) May a defendant avoid the preclusive effect of the prior felony-murder special-circumstance finding by challenging its validity under *Banks* and *Clark* in the context of the 1170.95 petition?

Appellate courts are split on the question of whether a pre-*Banks* and *Clark* felony-murder special-circumstance finding makes a petitioner ineligible for section 1170.95 relief as a matter of law. The issue is pending before our Supreme Court in *People v. Strong*, review granted March 10, 2021, S266606 ["Does a felony-murder special-circumstance finding (Pen. Code, § 190.2, subd. (a)(17)) made before *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 preclude a defendant from making a prima facie showing of eligibility for relief under Penal Code section 1170.95?"] (<https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=2339000&doc_no=S266606&request_token=NiIwLSEmTkw6WyBRSCM9TEhIMFQ0UDxTJSM%2BXzpSUCAgCg%3D%3D> [as of May 26, 2021], archived at

_____

[1] Undesignated statutory references are to the Penal Code.

<https://perma.cc/P8YS-L3CV>.)[2]  Until our Supreme Court resolves this disagreement, we stand by our decision in *Nunez*, and hold that a superior court may deny a section 1170.95 petition at the prima facie review stage on the ground that a defendant convicted of murder with a felony-murder special-circumstance finding (§ 190.2, subd. (a)(17)) is not, as a matter of law, eligible for resentencing under section 1170.95.  (*Nunez*, *supra*, 57 Cal.App.5th at pp. 83, 90–92, rev.gr.)

---

[2] The list of cases on both sides of this split continues to grow.  Those cases in which courts have determined a special-circumstance finding does not necessarily preclude relief under section 1170.95 include:  *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 431, review granted Aug. 18, 2021, S269792; *People v. Harris* (2021) 60 Cal.App.5th 939, 956, review granted Apr. 28, 2021, S267802; *People v. York* (2020) 54 Cal.App.5th 250, 260–261, review granted Nov. 18, 2020, S264954 (*York*); *People v. Smith* (2020) 49 Cal.App.5th 85, 93, review granted July 22, 2020, S262835 (*Smith*); *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179, review granted June 24, 2020, S262011 (*Torres*).  Other courts hold that a jury's special-circumstance finding renders a petitioner ineligible as a matter of law for relief under section 1170.95.  (See, e.g., *People v. Simmons* (2021) 65 Cal.App.5th 739, 747, 749, review granted Sept. 1, 2021, S270048 (*Simmons*); *Nunez*, *supra*, 57 Cal.App.5th at p. 90, rev.gr.; *People v. Jones* (2020) 56 Cal.App.5th 474, 478–479, review granted Jan. 27, 2021, S265854 (*Jones*); *People v. Allison* (2020) 55 Cal.App.5th 449, 460–462 (*Allison*); *People v. Gomez* (2020) 52 Cal.App.5th 1, 14–15, 17, review granted Oct. 14, 2020, S264033 (*Gomez*); *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1141, review granted Oct. 14, 2020, S264284 (*Galvan*); *People v. Murillo* (2020) 54 Cal.App.5th 160, 168, review granted Nov. 18, 2020, S264978 (*Murillo*).)

As in *Nunez*, we also conclude that a section 1170.95 petition is not the proper vehicle for challenging a murder conviction by attacking, under our Supreme Court's decisions in *Banks* and *Clark*, the jury's prior factual finding that the defendant was a major participant who acted with reckless indifference to human life. (See *Nunez, supra*, 57 Cal.App.5th at pp. 83, 95–97, rev.gr.; *Allison, supra*, 55 Cal.App.5th at pp. 458, 461; *Gomez, supra*, 52 Cal.App.5th at pp. 16–17, rev.gr.; *Galvan, supra*, 52 Cal.App.5th at p. 1142, rev.gr.; *Murillo, supra*, 54 Cal.App.5th at p. 168, rev.gr.; accord, *Simmons, supra*, 65 Cal.App.5th at p. 749, rev.gr.; *Jones, supra*, 56 Cal.App.5th at p. 482, rev.gr.)

We also reject appellant's claim that the superior court violated his equal protection rights by denying appellant's request for a *Franklin*[3] hearing to develop evidence for use in his resentencing petition and for later use at a youth offender parole hearing. Appellant was 19 years old when he committed his offenses in 1995. While appellant's resentencing petition under section 1170.95 was pending, appellant filed a petition seeking a *Franklin* hearing pursuant to sections 3051 and 1170, subdivision (d)(2). The superior court correctly denied the petition on the ground that appellant will be ineligible for a youth offender parole hearing because he was not under the age of 18 when he committed the offense for which he was sentenced to life in prison without the possibility of parole (LWOP). (See §§ 3051, subd. (b)(4), 1170, subd. (d)(1) & (2).)

---

[3] *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*).

## FACTUAL BACKGROUND[4]

On February 8, 1995, Pedro Arcos was living with his girlfriend and her family in an apartment at the Maravilla housing project in East Los Angeles. Arcos had just started a construction job, and his truck with his tools was parked in the parking lot on the side of the building. Arcos's brother-in-law, Osvaldo Venegas, came home late that night and saw appellant, Julio Duenas, and Jaime Davalos drinking beer in the parking lot near Arcos's truck. All three men wore hooded black jackets.

Everyone in the residence was asleep when Venegas came home. After he had gone inside, Venegas heard a noise and looked outside to see Duenas and Davalos dragging a milk crate to the backyard of a neighboring house as appellant looked on. The crate contained Arcos's tools from his truck. Venegas alerted his sister and Arcos, who both went outside. Arcos spoke to the three men and then returned to the house, angry because his truck had been broken into and his tools taken. Venegas pointed out where the tools were, and members of the family retrieved the tools and brought them inside.

Venegas then saw Davalos or Duenas walk between 20 and 40 feet toward a large commercial Dumpster in the parking lot and bend down as if to retrieve something. The man looked up to see if anyone was watching and then bent down again, looking three or four times. Appellant did not go near the Dumpster.

_____

[4] The factual background is drawn from the trial transcripts, of which we have taken judicial notice, as well as the statement of facts in the prior opinion in the direct appeal in this case. (*People v. Davalos and Garcia* (Aug. 6, 1998, B109077) [nonpub. opn.] (*Garcia I*).)

Shortly thereafter, there was a loud knock at the front door. The mother went to the door and heard a voice outside cursing and demanding that the " 'ass hole' " come out. The mother responded, " 'Leave us alone. He does not live here.' " At that, the door was kicked open, hitting the mother and knocking her to the floor. The mother saw that the first person to enter had a gun in his hand, but she could not identify him.

According to Venegas, Duenas entered the house first, but Venegas did not see Duenas with a gun. Duenas and Arcos began to fight, and Duenas dragged the struggling Arcos into the mother's bedroom. While Duenas and Arcos were fighting in the bedroom, Davalos came through the front door and hit Venegas in the face with a closed fist. Davalos continued on into the house. Venegas grabbed his mother and they ran out to the backyard with the rest of the family.

Venegas was about to jump over the patio fence to get help when appellant, who was standing outside, pointed a gun at Venegas and said, " 'You are not going nowhere. Get your ass down.' " Venegas went to the ground. The rest of his family was huddled together on the ground, crying.

While appellant was holding the family at gunpoint outside, Venegas could hear Arcos struggling and the sounds of slugging and banging on furniture in the bedroom. He heard two or three voices; one of them said in Spanish, " 'Give me your money. All I want [*sic*] was the tools to get some money.' " Arcos responded, " 'I don't have any money. Take whatever you want. Leave us all alone.' " While this was going on, appellant stood by silently pointing his gun.

At some point, appellant left the backyard area and walked toward the front of the house. As soon as appellant left, Venegas

6

jumped over the fence, broke into his neighbor's house, and called 911. About three to four minutes after appellant had left the backyard, and while Venegas was calling 911, Venegas heard two gunshots. Then his sister yelled, " 'They shot him. They shot him.' " The assailants left the house through the front door.

Arcos was found dead in the bedroom lying in a pool of blood with his head in a bucket. He had sustained three gunshot wounds, one to the head behind the right ear, one to his neck on a trajectory to the brain, and another to his right shoulder.

## PROCEDURAL BACKGROUND

Appellant and codefendant Davalos were tried and convicted in 1996 of the first degree murder of Arcos. (§§ 187, subd. (a).) The jury made special-circumstance findings that the murder was committed while appellant was engaged in the commission of a burglary and an attempted robbery. (§ 190.2, subd. (a)(17).) Both defendants were also convicted of first degree residential burglary (§ 459), attempted first degree robbery (§§ 211, 664), and second degree burglary of a vehicle (§ 459), with the finding as to all counts that a principal was armed with a firearm (§ 12022, subd. (a)(1)). Appellant was sentenced to a state prison term of life without the possibility of parole for the murder conviction plus one year for the firearm enhancement, and a concurrent two-year term for the second degree burglary. This court affirmed appellant's judgment of conviction on direct appeal, rejecting, inter alia, appellant's contention that the evidence was insufficient to sustain the special-circumstance

7

finding that appellant was a major participant who acted with reckless indifference to human life.[5] (*Garcia I, supra,* B109077.)

In 2017, appellant filed a petition for writ of habeas corpus in the superior court, claiming among other things, that the evidence was insufficient to support the special-circumstance findings because he was not a major participant who acted with reckless indifference to human life within the meaning of *Banks* and *Clark*. In a written decision the superior court rejected the *Banks* and *Clark* claim and summarily denied the petition: "[A]pplying *Banks* and *Clark*, the court finds the evidence supports that Petitioner was a major participant who acted with reckless indifference to human life." In 2018 appellant filed a petition for writ of habeas corpus in this court, in which he claimed he was not a major participant in the crime with sufficient notice of the real possibility of death to support a robbery-murder special-circumstances finding within the meaning of *Banks* and *Clark*. We summarily denied the petition. (*In re Francisco Garcia* on habeas corpus, B292267.)

On May 28, 2019, appellant filed a petition for resentencing under section 1170.95. The superior court appointed counsel for appellant, and following briefing by the parties, issued a tentative decision denying the petition on the ground that appellant was ineligible for relief because the special-circumstance finding established the jury had found appellant

---

[5] The court applied the standard articulated by the United States Supreme Court in *Tison v. Arizona* (1987) 481 U.S. 137, 158 (*Tison*) that had been incorporated in section 190.2, subdivision (d) for determining whether a defendant who was not the killer was a major participant in the murder who exhibited a reckless disregard for human life.

8

was a major participant who acted with reckless indifference to human life.  Thereafter, the parties submitted supplemental briefing in accordance with the superior court's request.  On October 19, 2020, the superior court issued a written decision in which it denied the petition on the ground that the felony-murder special-circumstance finding rendered appellant ineligible for section 1170.95 relief as a matter of law.  The court further noted that even under *Banks* and *Clark*, the evidence establishes that appellant was a major participant who acted with reckless indifference to human life.

While the resentencing petition was pending, appellant petitioned the superior court for a *Franklin*[6] hearing pursuant to sections 3051 and 1170, subdivision (d)(2).  On October 30, 2020, the court denied the petition on the ground that appellant was not under the age of 18 when he committed the offenses which resulted in his LWOP sentence.

## DISCUSSION

### I. The Superior Court May Deny a Section 1170.95 Petition in the Prima Facie Stage of Review on the Ground that a Petitioner Convicted of Murder with a Felony-murder Special-circumstance Finding Is Not, as a Matter of Law, Eligible for Resentencing Under Section 1170.95

In order to obtain relief from his felony-murder conviction under section 1170.95, a petitioner must make a prima facie showing that he or she "could not presently be convicted of murder or attempted murder *because of* changes to Section 188 or

---

[6] *Franklin, supra*, 63 Cal.4th 261.

189" made by Senate Bill No. 1437.[7]  (§ 1170.95, subd. (a)(3), italics added; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959, 971 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843; *Nunez*, *supra*, 57 Cal.App.5th at p. 90, rev.gr.)  As the superior court determined here, appellant cannot, as a matter of law, make the requisite prima facie showing based on the jury's felony-murder special-circumstance findings in his case.

   A. *Applicable legal principals*

   When a petition for resentencing under section 1170.95 meets the basic requirements for relief, the superior court must then determine whether the petitioner has made a prima facie showing that he or she is entitled to relief, and if so, the court must issue an order to show cause.  (§ 1170.95, subds. (a)–(c); *Lewis*, *supra*, 11 Cal.5th at p. 960.)  In making this determination, the superior court may consider the petitioner's record of conviction.  (*Lewis*, at pp. 970–971.)  "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, at p. 971.)  At the prima facie review stage, the superior court properly denies a petition where the record of conviction demonstrates the petitioner is ineligible for relief as a matter of law.  (*Ibid.*; see also *People v. Mancilla* (2021) 67 Cal.App.5th 854, 859, 863–864.)  However, in reviewing any part of the record to make its preliminary assessment regarding

---

   [7] As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2), section 1170.95 now also applies to persons previously convicted of attempted murder or manslaughter under a felony murder or natural and probable consequences theory.  (§ 1170.95, subd. (a).)

whether the petitioner would be entitled to relief if his or her factual allegations were proved, the superior court must take petitioner's factual allegations as true and may not engage in factfinding. (*Lewis*, at pp. 971–972; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 439–440.)

**B.** ***Given the jury's special-circumstance findings, the superior court correctly determined that appellant could still be convicted under the amended statute.***

With Senate Bill No. 1437's addition of subdivision (e) to section 189, the crime of felony murder is now subject to the same requirements as a special-circumstance finding under section 190.2, subdivision (d).[8] (*People v. Superior Court* (*Ferraro*) (2020) 51 Cal.App.5th 896, 907 [" 'the standard under section 189, subdivision (e)(3) for holding a defendant liable for felony murder is [now] the same as the standard for finding a special circumstance under section 190.2[, subdivision ](d), as the former provision expressly incorporates the latter' "]; *In re Taylor* (2019) 34 Cal.App.5th 543, 561.) That is, to be convicted of first degree

---

[8] Except for the deletion of the word "felony" in the 1998 amendment to the statute, section 190.2, subdivision (d) remains unchanged from the version in effect in 1996 when appellant was convicted, which provided: "[E]very person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which [felony] results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4."

11

murder under section 189 as amended, the defendant must have been the actual killer, a direct aider and abettor who acted with the intent to kill, *or* "a major participant in the underlying felony [who] acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); *People v. Farfan* (2021) 71 Cal.App.5th 942, 954 (*Farfan*).)

Here, appellant's jury was instructed pursuant to CALJIC No. 8.80.1 that if it found appellant was not the actual killer, it could not find the burglary- or attempted robbery-murder special-circumstance true unless it was satisfied beyond a reasonable doubt that appellant intended to kill *or* he was a *major participant* in the burglary or attempted robbery, *and*, when he participated in the crime, *he acted with reckless indifference to human life*. The jury was further instructed that "[a] defendant acts with reckless indifference to human life when that defendant knows or is aware that [his] . . . acts involve a grave risk of death to an innocent human being." The jury found the special circumstance true as to both underlying felonies beyond a reasonable doubt, and thereby necessarily made the factual findings that appellant participated in the burglary and attempted robbery with the intent to kill Arcos, *or* he was a major participant in the underlying felonies who acted with reckless indifference to Arcos's life. Either of these findings would allow appellant to be convicted of first degree murder notwithstanding Senate Bill No. 1437's changes to section 189. (*Farfan, supra*, 71 Cal.App.5th at p. 954; *Allison, supra*, 55 Cal.App.5th at p. 457.)

Because the jury's special-circumstance finding in this case means it found beyond a reasonable doubt that appellant either had the intent to kill *or* he acted with reckless indifference to human life as a major participant in the burglary and attempted

12

robbery, these findings establish appellant is ineligible for section 1170.95 relief as a matter of law.  (See *Farfan*, *supra*, 71 Cal.App.5th at p. 954; *Allison*, *supra*, 55 Cal.App.5th at pp. 460–462 ["If the prior finding shows the petitioner meets the requirements for murder liability under amended sections 188 and 189, then it is not true that the petitioner could not be convicted of murder *because of the changes to sections 188 and 189*, and the petition must be denied"]; *Simmons*, *supra*, 65 Cal.App.5th at pp. 747, 749, rev.gr.)

C. ***The jury's felony-murder special-circumstance findings preclude section 1170.95 relief even though appellant's conviction predated the Supreme Court's* Banks *and* Clark *decisions.***

Appellant seeks to avoid the preclusive effect of the special-circumstance findings to his section 1170.95 claim by challenging the evidentiary support for those findings under our Supreme Court's decisions in *Banks* and *Clark*.  Asserting that this court's prior rejection of the substantial evidence challenge to the special-circumstance findings on direct appeal and the summary denial of the habeas petition were "[b]ased on [m]isrepresentations of [c]ritical [f]acts," appellant argues the evidence is insufficient to support the jury's findings that he was a major participant who acted with reckless indifference under the criteria established by *Banks* and *Clark*.  Thus, according to appellant, the jury's pre-*Banks* and *Clark* special-circumstance findings do not preclude relief under section 1170.95.  We disagree.

To assist appellate review of a jury's special-circumstance findings, our Supreme Court set forth a nonexclusive set of factors to aid in the determination of whether substantial

evidence supports the jury's conclusion that an individual was a "major participant" who acted with reckless disregard for human life.[9] (*Banks*, *supra*, 61 Cal.4th at p. 803; *Clark*, *supra*, 63 Cal.4th at pp. 618–622.) Following its examination of the two United States Supreme Court decisions in *Enmund v. Florida* (1982) 458 U.S. 782 and *Tison, supra*, 481 U.S. 137, *Banks* explained that a "major participant" in a crime that results in a murder is one whose "personal involvement" is "substantial." (*Banks,* at p. 802.) While such a participant "need not be the ringleader" (*People v. Williams* (2015) 61 Cal.4th 1244, 1281), his or her involvement must be "greater than the actions of an ordinary aider and abettor" (*Banks*, at p. 802). Our Supreme Court held that the totality of the circumstances should be examined when evaluating the extent of participation and suggested several relevant but not dispositive factors to consider: (1) the defendant/aider and abettor's role in planning the robbery; (2) his or her role in supplying or using lethal weapons; (3) his or her awareness of the "particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants"; (4) his or her presence at the scene of the

---

[9] "The only necessary difference between a pre-*Banks* and *Clark* felony-murder special-circumstance finding and one returned after *Banks* and *Clark* arises at the level of appellate review: If the finding was challenged on direct appeal before *Banks* and *Clark*, appellate review of the sufficiency of the evidence to support the finding was not informed by *Banks* and *Clark*." (*Nunez, supra*, 57 Cal.App.5th at p. 93, fn. 7, rev.gr.; *People v. Price* (2017) 8 Cal.App.5th 409, 450–451 (*Price*) [*Banks* and *Clark* decisions govern judicial review for sufficiency of the evidence rather than the facts or elements a jury was required to find].)

14

killing and thus whether he or she was "in a position to facilitate or prevent the actual murder"; and (5) his or her actions after the use of lethal force. (*Banks*, at p. 803; see *Clark,* at p. 611.)

A defendant acts with reckless indifference to human life when he or she "has ' "knowingly engag[ed] in criminal activities known to carry a grave risk of death." ' " (*Banks*, *supra*, 61 Cal.4th at p. 801.) Specifically, "[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create." (*Ibid.*) In *Clark*, the court put it this way: " 'reckless indifference' . . . encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, *supra*, 63 Cal.4th at p. 617.)

To assist appellate review of a jury's reckless indifference finding, *Clark* set out a series of considerations relevant to determining whether a defendant acted with reckless indifference to human life. (*Clark*, *supra*, 63 Cal.4th at pp. 618–622.) These include: (1) the defendant's use of a firearm, even if the defendant did not kill the victim (*id.* at p. 618); (2) the defendant's physical presence at the crime, opportunities to prevent or contain the crime and/or aid the victim (*id.* at p. 619); (3) the duration of the underlying felony (*id.* at p. 620); (4) the defendant's awareness of the likelihood one of the perpetrators will kill (*id.* at p. 621); and (5) any efforts by the defendant to minimize the risks of violence during the commission of the felony (*ibid.*). But "[j]ust as [the court] said of the factors concerning major participant status in *Banks*, '[n]o one of these considerations is necessary, nor is any one of them necessarily

15

sufficient' " to establish whether a defendant was a major participant who acted with reckless indifference to human life. (*Clark*, at p. 618, quoting *Banks*, *supra*, 61 Cal.4th at p. 803.)

*Banks* and *Clark* did not create new law, nor did they fundamentally change the meaning of the phrases "major participant" and "reckless indifference to human life." (*Allison*, *supra*, 55 Cal.App.5th at p. 458; *Nunez*, *supra*, 57 Cal.App.5th at p. 92, rev.gr.; *Jones*, *supra*, 56 Cal.App.5th at p. 484, rev.gr.) Rather, the high court in those cases "simply stated what section 190.2, subdivision (d) has always meant." (*In re Miller* (2017) 14 Cal.App.5th 960, 979 & 978 [*Banks* and *Clark* "merely clarified the 'major participant' and 'reckless indifference to human life' principles that existed when defendant's conviction became final"]; *Nunez*, *supra*, 57 Cal.App.5th at p. 92, rev.gr.; *Allison*, *supra*, 55 Cal.App.5th at p. 458.)

Indeed, our Supreme Court has not required any new jury instruction on the clarifications, and no mandatory language or material changes have been made to the CALJIC or CALCRIM special-circumstance instructions since *Banks* and *Clark* were decided. (Compare CALJIC No. 8.80.1 (1996 rev.) (6th ed. 1996) with CALJIC No. 8.80.1 (Fall 2015 ed.); see also *Nunez*, *supra*, 57 Cal.App.5th at p. 92, rev.gr.; *Gomez*, *supra*, 52 Cal.5th at p. 14, fn. 6, rev.gr. [CALCRIM No. 703 before *Banks* and *Clark*]; CALCRIM No. 703 (2020 ed.).) Rather, while both CALJIC No. 8.80.1 and CALCRIM No. 703 now include *optional* language drawn from *Banks* and *Clark* regarding the factors a jury *may consider*, neither *Banks* nor *Clark* held that the trial court has a sua sponte duty to instruct on those factors. (*Price*, *supra*, 8 Cal.App.5th at pp. 450–451 [jury instructions that omit the *Banks* and *Clark* factors are not defective]; *Allison*, *supra*, 55

Cal.App.5th at pp. 458–459]; Bench Notes to CALCRIM No. 703 (2020 ed.) p. 452.)

As we observed in *Nunez*, "the felony-murder special-circumstance instructions given *post-Banks* and *Clark* do not necessarily differ at all from pre-*Banks* and *Clark* felony-murder special-circumstance instructions—the factors, issues, and questions the *post-* and pre-*Banks* and *Clark* juries consider to make the [major participant/reckless indifference] finding are exactly the same.  Accordingly, whether a jury made a *post-* or pre-*Banks* and *Clark* [major participant/reckless indifference] finding, that finding establishes as a matter of law the defendant's ineligibility for relief under section 1170.95 because he or she was found either to have participated in the specified felony with the intent to kill, *or* he was a major participant who acted with reckless indifference to human life and could still be convicted of murder notwithstanding the changes to section 189." (*Nunez*, *supra*, 57 Cal.App.5th at p. 93, rev.gr.)

In this regard, we reiterate our disagreement with the decisions in *Torres*, *supra*, 46 Cal.App.5th 1168, rev.gr., *Smith*, *supra*, 49 Cal.App.5th 85, rev.gr., and *York*, *supra*, 54 Cal.App.5th 250, rev.gr., because all three of these cases misinterpret the scope and effect of *Banks* and *Clark*.

According to these courts, because "the factual issues that the jury was asked to resolve [before the *Banks* and *Clark* decisions] are not the same factual issues our Supreme Court has since identified as controlling," such findings should not be treated "as if they resolved key disputed facts." (*Torres*, *supra*, 46 Cal.App.5th at p. 1180, rev.gr.; *Smith*, *supra*, 49 Cal.App.5th at p. 93, rev.gr.)  *York* went a step further, holding that for purposes of section 1170.95, a pre-*Banks* and *Clark* jury finding that the

17

defendant acted with reckless indifference to human life as a major participant should be treated as if that finding simply did not exist.  (*York*, *supra*, 54 Cal.App.5th at p. 258, rev.gr.; *Nunez*, *supra*, 57 Cal.App.5th at p. 94, rev.gr.)  However, contrary to these decisions' holdings, we find "no basis to conclude as a general matter that a pre-*Banks* and *Clark* jury was instructed differently than a *post-Banks* and *Clark* jury, or resolved different factual issues, answered different questions, or applied different standards.  The mandatory instructions did not change, and the pre-*Banks* and *Clark* jury necessarily resolved the same factual issues beyond a reasonable doubt that a *post-Banks* and *Clark* jury would necessarily resolve beyond a reasonable doubt."  (*Nunez*, *supra*, 57 Cal.App.5th at p. 94, rev.gr.)

Finally, as we noted in *Nunez*, "jury findings in a final judgment are generally considered to be valid and binding unless and until they are overturned by collateral attack, regardless of whether they were subjected to appellate review.  Nothing in *Banks* or *Clark* supports the automatic invalidation or disregard of such findings by a properly instructed jury."  (*Nunez, supra*, 57 Cal.App.5th at p. 94, rev.gr.)

**D. *Appellant may not challenge his murder conviction by relitigating prior findings of fact in a section 1170.95 proceeding.***

Appellant contends that the evidence here is insufficient to support a finding that he was a major participant who acted with reckless indifference to human life.  Acknowledging that he has previously maintained this claim in the trial court, on direct appeal, and in habeas petitions under *Banks* and *Clark* in the superior court and in this court, appellant asserts that all of the prior court rulings in this case erroneously rejected the claim on

18

the basis of "[m]isrepresentations of [c]ritical [f]acts." Specifically, appellant cites various conflicts and inconsistencies in the evidence to contend that the evidence presented at trial does not establish beyond a reasonable doubt that appellant had a gun, that he held the family at gunpoint, or that he kept the family from seeking help. According to appellant, a fair review of the actual evidence presented at trial (with "significant clarifications") in light of the *Banks* and *Clark* factors establishes appellant's prima facie entitlement to relief under section 1170.95 We disagree.

We have previously held that a jury's findings that the defendant was a major participant who acted with reckless disregard for human life may not be relitigated in a section 1170.95 proceeding. (*Nunez, supra*, 57 Cal.App.5th at pp. 83, 95–96, rev.gr.) In so holding we have agreed with other appellate courts that a section 1170.95 petition is not the appropriate vehicle for a person convicted prior to *Banks* and *Clark* to challenge a felony-murder special circumstance, which must first be challenged by way of habeas corpus or other available collateral attack. (*Nunez,* at p. 83, rev.gr., citing *Allison, supra*, 55 Cal.App.5th at pp. 458, 461; *Murillo, supra*, 54 Cal.App.5th at p. 168, rev.gr.; *Galvan, supra*, 52 Cal.App.5th at p. 1142, rev.gr.; *Gomez, supra*, 52 Cal.App.5th at pp. 16–17, rev.gr.; accord, *Simmons, supra*, 65 Cal.App.5th at pp. 748–749, rev.gr.; *Jones, supra*, 56 Cal.App.5th at p. 482, rev.gr.)

Senate Bill No. 1437 contains no indication in its text or history that the Legislature intended to permit defendants to challenge their murder convictions by attacking prior findings of fact. Indeed, the Legislature made plain that its purpose in enacting section 1170.95 was to give defendants the benefit of the

amendments to sections 188 and 189 in the absence of a factual basis for a murder conviction in light of the statutory revisions. As the court in *Allison* observed, "subdivision (a)(3) of section 1170.95 says nothing about erroneous prior findings or the possibility of proving contrary facts if given a second chance. Rather, it requires that the petitioner could not be convicted of murder *because of the changes to sections 188 and 189*, not *because a prior fact finder got the facts wrong*." (*Allison, supra*, 55 Cal.App.5th at p. 461.)

Accordingly, as we held in *Nunez*, a defendant whose pre-*Banks* and *Clark* special-circumstance finding cannot withstand *post-Banks* and *Clark* scrutiny should seek relief by way of a petition for habeas corpus in which the petitioner would properly bear the burden of proof.[10] (*Nunez, supra*, 57 Cal.App.5th at

---

[10] As *Galvan* noted, the guidance given by our Supreme Court in *Banks* and *Clark* amounted to a sufficiently significant clarification of the law that "courts have allowed defendants to challenge the validity of pre-*Banks* and *Clark* special-circumstance findings via habeas corpus, making an exception to the rule that ordinarily bars a defendant from challenging the sufficiency of the evidence in a habeas petition." (*Galvan, supra*, 52 Cal.App.5th at p. 1141, rev.gr.; see *In re Scoggins* (2020) 9 Cal.5th 667, 673 ["Where a decision clarifies the kind of conduct proscribed by a statute, a defendant whose conviction became final before that decision 'is entitled to post-conviction relief upon a showing that his [or her] conduct was not prohibited by the statute' as construed in the decision"].) Thus, unlike its preclusive effect with respect to his petition under section 1170.95, appellant's direct challenge to the sufficiency of the evidence in support of the jury's special-circumstance findings in *Garcia I* did not bar a habeas petition because this court's

20

pp. 95–96, rev.gr.; *Jones*, *supra*, 56 Cal.App.5th at pp. 482–483, rev.gr.; *Murillo*, *supra*, 54 Cal.App.5th at p. 168, rev.gr.; *Galvan*, *supra*, 52 Cal.App.5th at p. 1142, rev.gr. ["If [appellant] is entitled to relief based on *Banks* and *Clark*, the avenue for such relief is not section 1170.95, but a petition for writ of habeas corpus"].)

Some courts have held that on appeal from the denial of a section 1170.95 petition, a reviewing court may independently conduct its own *Banks*/*Clark* analysis to determine whether the special-circumstance finding was supported by substantial evidence. (*People v. Law* (2020) 48 Cal.App.5th 811, 822, 825, review granted July 8, 2020, S262490; *Murillo*, *supra*, 54 Cal.App.5th at pp. 169–173, rev.gr.; see also *People v. Pineda* (2021) 66 Cal.App.5th 792, 795, 801–802, review granted Sept. 29, 2021, S270513; *People v. Secrease* (2021) 63 Cal.App.5th 231, 236, 255–256 ["As is always the case with sufficiency-of-the-evidence review, the application of *Banks* and *Clark* to a given set of facts ultimately presents an issue of law"], review granted June 30, 2021, S268862 (*Secrease*).) According to these cases, if the court determines the felony-murder special-circumstance finding was supported by substantial evidence under the *Banks* and *Clark* standards, the defendant is precluded from alleging prima facie entitlement to relief under section 1170.95. (See *Secrease*, at p. 236, rev.gr.; *Murillo*, at p. 173, rev.gr.; *Law*, at p. 825, rev.gr.) On the other hand, if the felony-murder special-circumstance finding fails analysis under *Banks* and *Clark*, an

---

rejection of the substantial evidence challenge was made without the benefit of the *Banks* and *Clark* clarifications.

21

order to show cause must issue and the case must be set for an evidentiary hearing. (*Secrease*, at p. 236, rev.gr.)

Here, even if we adopted the "middle ground" approach favored by these courts (see *Secrease*, *supra*, 63 Cal.App.5th at p. 247, rev.gr.), we would nevertheless be compelled to conclude that appellant cannot make a prima facie showing of eligibility for section 1170.95 relief as a matter of law for the simple reason that substantial evidence supports the jury's finding that appellant was a major participant in the burglary and attempted robbery who acted with reckless disregard for human life.

The standards under which we assess challenges to the sufficiency of the evidence are well settled, and are the same principles we apply to assess the sufficiency of the evidence underlying a true finding on a special circumstance. (*Banks*, *supra*, 61 Cal.4th at p. 804.) " 'When reviewing a challenge to the sufficiency of the evidence, we ask " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " [Citation.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for " 'substantial evidence—that is, evidence which is reasonable, credible, and of solid value' " that would support a finding beyond a reasonable doubt. [Citation.] In doing so, we 'view the evidence in the light most favorable to the jury verdict and presume the existence of every fact that the jury could reasonably have deduced from that evidence.' [Citation.] 'We must also "accept logical inferences that the jury might have drawn from the circumstantial evidence." ' [Citation.] We do not question the credibility of a witness's testimony, so long as it is 'not inherently improbable,'

nor do we reconsider the weight to be given any particular item of evidence." (*People v. Navarro* (2021) 12 Cal.5th 285, 302; *People v. Brooks* (2017) 3 Cal.5th 1, 57.)

Appellant's challenge to the evidentiary support for the major participant and reckless disregard findings hangs on his assertion that the evidence does not support a finding beyond a reasonable doubt that appellant had a gun or that he prevented any family members from seeking help. But it is not for the reviewing court to determine whether a fact has been proved beyond a reasonable doubt; that is the province of the jury. (*People v. Reilly* (1970) 3 Cal.3d 421, 425 ["The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt"].) Here, Venegas testified at trial that appellant pointed a gun at him and said, " 'You are not going nowhere. Get your ass down.' " Although that testimony was impeached with Venegas's statement to police the night of the murder that the "little cholo" in the back did not have a gun, and no one else in the family saw appellant with a gun, it was the jury's prerogative to weigh Venegas's credibility and accept or reject his trial testimony about appellant's use of a gun. As our Supreme Court has long observed, " '[i]f the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding.' " (*People v. Thompson* (2010) 49 Cal.4th 79, 114, quoting *People v. Ceja* (1993) 4 Cal.4th 1134, 1139.)

Moreover, appellant's claim that the evidence does not support a finding that he kept the family from seeking help is belied by the record. Venegas and his aunt both testified that

23

appellant ordered Venegas down from the fence when Venegas was trying to get away to call the police, and Venegas complied. Had Venegas been able to get away when he first tried, the police might have arrived in time to prevent Arcos's murder. As it was, appellant did not leave his post allowing Venegas to call the police until just before the shooting, when it was too late.

Finally, as the superior court explained in denying appellant's habeas petition, the balance of *Banks* and *Clark* factors supports the jury's determination that appellant was a major participant in the burglary and attempted robbery who acted with reckless disregard for human life. There was substantial evidence that appellant used a gun to prevent the victims from leaving the house to seek help. The jury could reasonably infer that appellant was aware one of his cohorts had retrieved a gun prior to breaking down the door to the house and that violence would ensue. Appellant was also aware of the dangerous nature of the crime because he, too, was armed. By their very nature, guns are dangerous and deadly, and it is reasonable to expect that the use of a gun would result in the death of another. (See *Clark*, *supra*, 63 Cal.4th at p. 618.) Appellant's use of a gun also reflected his willingness to use lethal force, thus supporting a finding that he acted with reckless indifference to human life. By standing guard over the family outside while Davalos and Duenas carried out the robbery inside, appellant played an active role in the criminal enterprise leading up to the murder, and fled the scene afterward.

## II. The Superior Court Properly Denied Appellant's Petition for a *Franklin* Hearing

Appellant contends that section 3051 violates equal protection by excluding people like him who were between the

ages of 18 and 25 when they committed murder and were sentenced to life without the possibility of parole. He further asserts that the superior court erred in denying the request for a *Franklin* hearing because youth factors are relevant to the question of whether, as a teenager, he acted with reckless indifference to human life. We reject both claims.

**A. *Section 3051 does not violate equal protection by treating youthful LWOP offenders over the age of 18 differently than both juvenile LWOP offenders and youthful murderers not sentenced to LWOP.***

"In response to a series of decisions addressing Eighth Amendment limits on juvenile sentencing (see, e.g., *Miller v. Alabama* (2012) 567 U.S. 460; *Graham v. Florida* (2010) 560 U.S. 48, 75), the Legislature enacted section 3051." (*People v. Sands* (2021) 70 Cal.App.5th 193, 197–198 (*Sands*); Sen. Bill No. 260 (2013–2014 Reg. Sess.); Stats. 2013, ch. 312, §§ 1, 4.) In its current form, the statute grants to most persons convicted of crimes committed before the age of 26 the right to a "youth offender parole hearing" to be held 15, 20, or 25 years after the imposition of sentence to enable the defendant to seek parole based on his or her "diminished culpability [as a] juvenile[] as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity." (§§ 3051, subds. (a)(1) & (b), 4801, subd. (c); Stats. 2013, ch. 312, § 1; *Sands*, at p. 198.)

In *Franklin*, our Supreme Court held that a juvenile is entitled to an "adequate opportunity . . . to make a record of mitigating evidence tied to his youth"—either at sentencing or, failing that, at a separate hearing—for use at the youth offender parole hearing to which he or she is entitled under section 3051.

25

(*Franklin, supra*, 63 Cal.4th at pp. 268–269, 283–284.) A few years later in *In re Cook* (2019) 7 Cal.5th 439, our Supreme Court held that an evidence preservation hearing of the type envisioned by *Franklin* is available for offenders who are eligible for youthful offender parole hearings under section 3051. (*Cook, supra*, at pp. 458–459.) However, only those persons who are eligible for a youthful offender parole hearing under section 3051 are entitled to an evidentiary hearing under *Franklin*, and section 3051, subdivision (h) makes ineligible for a youth offender parole hearing those offenders who were over the age of 18 when they committed their offense, if they were sentenced to LWOP or were convicted under the One Strike or Three Strikes laws.

Appellant was 19 years old when he committed the offenses for which he was sentenced to LWOP, and concedes that under the current law he will not be eligible for a youth offender parole hearing. He argues, however, that equal protection principles require that he be treated as eligible for parole consideration.

Appellate courts throughout California have uniformly rejected appellant's equal protection argument, affirming orders denying a *Franklin*-type hearing to a defendant sentenced to LWOP for special-circumstance murder committed when he or she was between 18 and 26 years old. (*Sands, supra*, 70 Cal.App.5th at pp. 203–205; *In re Murray* (2021) 68 Cal.App.5th 456, 463–464 (*Murray*); *People v. Jackson* (2021) 61 Cal.App.5th 189, 196–200 (*Jackson*); *People v. Acosta* (2021) 60 Cal.App.5th 769, 779–780; *People v. Morales* (2021) 67 Cal.App.5th 326, 347–348 (*Morales*); *In re Williams* (2020) 57 Cal.App.5th 427, 435–436 (*Williams*); *In re Jones* (2019) 42 Cal.App.5th 477, 482–483.) These courts have concluded that section 3051 does not violate equal protection by treating young adult offenders sentenced to

LWOP more harshly than juvenile offenders sentenced to LWOP because, even assuming these two groups are similarly situated, an LWOP sentence imposed on a juvenile offender might violate the constitution and the Legislature "could rationally decide to remedy unconstitutional sentences but go no further." (*Sands*, at p. 204; but see *Williams*, at p. 435 [young adult offenders sentenced to life without parole are not similarly situated to those sentenced to de facto life without parole].)

Our Supreme Court has explained that courts "find a denial of equal protection only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose. [Citation.] This core feature of equal protection sets a high bar before a law is deemed to lack even the minimal rationality necessary for it to survive constitutional scrutiny. Coupled with a rebuttable presumption that legislation is constitutional, this high bar helps ensure that democratically enacted laws are not invalidated merely based on a court's cursory conclusion that a statute's tradeoffs seem unwise or unfair." (*People v. Chatman* (2018) 4 Cal.5th 277, 288–289.) Accordingly, we must accept any plausible rational basis without questioning its wisdom, logic, persuasiveness, or fairness, and regardless of whether the Legislature ever articulated it. (*Id.* at p. 289.)

A sentence of life without parole may violate the Eighth Amendment's prohibition on cruel and unusual punishment if imposed on a juvenile offender (*Graham v. Florida* (2010) 560 U.S. 48, 75; *Miller v. Alabama* (2012) 567 U.S. 460, 479), while not offending the Eighth Amendment when imposed on an adult (*Sands, supra*, 70 Cal.App.5th at p. 204; *Morales, supra*, 67 Cal.App.5th at p. 347). For this reason, we agree with the Courts

of Appeal which have uniformly determined that the Legislature had a rational basis to distinguish between young adult and juvenile offenders based on their age by choosing to remedy the unconstitutionality of life without parole sentences for juvenile offenders.  (*Sands*, at p. 204; *Murray*, *supra*, 68 Cal.App.5th at pp. 463–464 [age is rational basis for distinction]; *Morales, supra*, 67 Cal.App.5th at p. 347; *Acosta, supra*, 60 Cal.App.5th at pp. 779–780; *Williams, supra*, 57 Cal.App.5th at p. 435, fn. 5; see *Miller, supra*, 567 U.S. at p. 481 ["[w]e have by now held on multiple occasions that a sentencing rule permissible for adults may not be so for children"]; *Roper v. Simmons* (2005) 543 U.S. 551, 574 ["[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood"].)

Despite finding a rational basis for the different treatment of young adult and juvenile offenders under section 3051, subdivision (h), many justices of the California Courts of Appeal have called for legislative reconsideration of section 3051.  (*Jackson, supra*, 61 Cal.App.5th at pp. 201–202 (conc. opn. of Dato, J.); *Acosta, supra*, 60 Cal.App.5th at p. 781 (maj. opn. of Goethals, J., joined by Bedsworth, Acting P. J.); *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1041 (conc. opn. of Segal, J.); *In re Jones*, *supra*, 42 Cal.App.5th at pp. 486–487 (conc. opn. of Pollak, P. J., joined by Streeter, J.); see also *Williams*, *supra*, 57 Cal.App.5th at p. 436, fn. 7 [acknowledging tension between § 3051's parole eligibility scheme and equal protection principles]; *People v. Escamilla* (Mar. 18, 2021, F077568) [nonpub. opn.] (maj. opn. of Meehan, J., joined by DeSantos, J.); *People v. Smith* (Feb. 24, 2021, B305527) [nonpub. opn.] [same].)  California Supreme Court Justice Liu has echoed this invitation, urging " 'the Legislature to reconsider whether our evolving knowledge

28

of brain development suggests that unalterable judgments about individuals based on what they did between age 18 and 25 may be unjustifiable.' (*Jackson*, at pp. 201–202 (conc. opn. of Dato, J.).)" (*People v. Jackson* (June 9, 2021, No. S267812) ___Cal.5th___ [2021 Cal. LEXIS 3874 at pp. *1–*3] (conc. statement by Liu, J.).)

Unless and until the Legislature sees fit to amend section 3051, we hold that appellant is not entitled to an evidentiary hearing under *Franklin* because he is not entitled to a youth offender parole hearing under section 3051 in the first instance.

**B.** ***The superior court did not err by declining to grant a* Franklin-*like hearing for purposes of the resentencing petition under section 1170.95.***

Appellant also contends the superior court erred in denying his petition for a *Franklin* hearing "to gather the type of evidence that could be used both at a youth offender parole hearing and as part of an 1170.95 presentation on the issue of whether appellant, as a 19-year-old, acted with reckless indifference to human life." As set forth above, however, appellant is ineligible both for resentencing under section 1170.95 and for a youth offender parole hearing under section 3051. He cites no law suggesting he has any right to a *Franklin* hearing under these circumstances. Accordingly, we find no error in the superior court's denial of appellant's petition for a *Franklin* hearing.

## DISPOSITION

The orders of the superior court are affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

I concur:


CHAVEZ, J.

*People v. Garcia*, B308824

ASHMANN-GERST, J., Concurring in the judgment.

I agree with the majority that the trial court properly denied defendant Francisco Garcia's petition for resentencing under Penal Code section 1170.95.[1]  In finding the special circumstance (§ 190.2, subd. (a)(17)) true, the jury necessarily found either that defendant was an aider and abettor who harbored an intent to kill or a major participant who acted with reckless indifference to human life, findings that would make him guilty of murder under the amended law.  (See §§ 189, subd. (e)(3), 1170.95, subd. (a).)  Either finding makes defendant ineligible as a matter of law.  (*People v. Farfan* (2021) 71 Cal.App.5th 942, 954 ["the jury's true finding on the special circumstance establishes appellant is ineligible for section 1170.95 relief as a matter of law"].)

And, the jury's special circumstance finding is supported by substantial evidence through the prism of *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522.  (See, e.g., *People v. Secrease* (2021) 63 Cal.App.5th 231, 255, review granted June 30, 2021, S268862.)

Pursuant to my concurring opinion in *People v. Nunez* (2020) 57 Cal.App.5th 78, 97–99, review granted January 13, 2021, S265918, I do not join in the majority's conclusion that the jury's finding "must first be challenged by way of habeas corpus or other available collateral attack." (Maj. Opn., at p. 19.)

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

Finally, I agree that the trial court properly denied defendant's petition for a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261.


_____, J.
ASHMANN-GERST

2